

GERARD C. RICKHOFF          DONNA KAY McKINNEY

## COUNTY CLERK & DISTRICT CLERK
## COURT RECORDS SEARCH

# Case #2017CI08171

**Name**: MICHAEL GONZALEZ

**Date Filed** : 05/03/2017

**Case Status** : PENDING

**Litigant Type** : PLAINTIFF

**Court** : 073

**Docket Type** : CONSUMER/DTPA

**Business Name** :

**Style** : MICHAEL GONZALES ET AL

**Style (2)** : vs METROPOLITAN LLOYDS INSURANCE COMPANY ET AL



EXHIBIT

A

# Case History

*Currently viewing 1 through 15 of 15 records*

| Sequence | Date Filed | Description |
| --- | --- | --- |
| P00010 | 7/5/2017 | ORIGINAL ANSWER OF<br>CHERYL STEPPIG |
| P00009 | 7/5/2017 | ORIGINAL ANSWER OF<br>METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY |
| P00008 | 7/5/2017 | ORIGINAL ANSWER OF<br>METLIFE AUTO & HOME INSURANCE AGENCY INC |
| P00007 | 7/5/2017 | ORIGINAL ANSWER OF<br>METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS |
| S00005 | 6/8/2017 | CITATION<br>CHERYL STEPPIG<br>ISSUED: 6/8/2017 RECEIVED: 6/15/2017<br>EXECUTED: 6/15/2017 RETURNED: 6/16/2017 |
| S00004 | 6/8/2017 | CITATION<br>PAUL HEARN<br>ISSUED: 6/8/2017 |
| S00003 | 6/8/2017 | CITATION<br>METLIFE AUTO & HOME INSURANCE AGENCY INC<br>ISSUED: 6/8/2017 RECEIVED: 6/16/2017<br>EXECUTED: 6/16/2017 RETURNED: 6/21/2017 |
| S00002 | 6/8/2017 | CITATION<br>METROPOLITAN PROPERTY & CASUALTY INS CO<br>ISSUED: 6/8/2017 RECEIVED: 6/16/2017<br>EXECUTED: 6/16/2017 RETURNED: 6/21/2017 |
| S00001 | 6/8/2017 | CITATION<br>METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS<br>ISSUED: 6/8/2017 RECEIVED: 6/16/2017<br>EXECUTED: 6/16/2017 RETURNED: 6/21/2017 |
| P00006 | 6/6/2017 | LETTER TO DISTRICT CLERK<br>FR:CHRISTINE BANDA RE:ENCLOSED COPIES |
| P00005 | 5/3/2017 | SERVICE ASSIGNED TO CLERK 2 |
| P00004 | 5/3/2017 | JURY FEE PAID |
| P00003 | 5/3/2017 | CIVIL CASE INFORMATION SHEET |
| P00002 | 5/3/2017 | REQUEST FOR SERVICE AND PROCESS |
| P00001 | 5/3/2017 | PET FOR HAIL DAMAGE RESIDENTIAL<br>WITH JURY DEMAND |

FILED
5/3/2017 7:15:22 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Brenda Carrillo

5CITSPPS/SAC2

W/JD

## 2017CI08171

CAUSE NO._____

| | | |
|---|---|---|
| MICHAEL GONZALEZ AND | § | IN THE DISTRICT COURT OF |
| LIZZETT REQUENEZ, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| METROPOLITAN LLOYDS | § | |
| INSURANCE COMPANY OF TEXAS, | § | |
| METROPOLITAN PROPERTY & | § | |
| CASUALTY INSURANCE | § | |
| COMPANY, METLIFE AUTO & | § | |
| HOME INSURANCE AGENCY, INC., | § | |
| PAUL HEARN, AND CHERYL | § | |
| STEPPIG, | § | 73RD JUDICIAL DISTRICT |
| *Defendants*. | § | |

---

### PLAINTIFFS' ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Michael Gonzalez and Lizzett Requenez ("Plaintiffs") and file this, *Plaintiffs' Original Petition*, complaining of Metropolitan Lloyds Insurance Company of Texas ("Metropolitan"), Metropolitan Property & Casualty Ins. Co. ("Metlife"), Metlife Auto & Home Insurance Agency, Inc. ("MAH"), Paul Hearn ("Hearn"), and Cheryl Steppig ("Steppig") (collectively referred to as "Defendants"), and for cause of action, Plaintiffs would respectfully show this Honorable Court the following:

### DISCOVERY CONTROL PLAN

1.    Plaintiffs intend for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiffs will ask the Court to order that discovery be conducted in

accordance with a discovery control plan tailored to the particular circumstances of this suit.

## PARTIES

2.      Plaintiffs Michael Gonzalez and Lizzett Requenez are individuals residing in Bexar County, Texas.

3.      Defendant Metropolitan is an insurance company engaging in the business of insurance in the State of Texas. This defendant may be served with personal process, by a process server, by serving its Attorney for Service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.      Defendant Metlife is an insurance company engaging in the business of insurance in the State of Texas. This defendant may be served with personal process, by a process server, by serving its Attorney for Service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.      Defendant MAH is an insurance adjusting company engaging in the business of insurance in the State of Texas. This defendant may be served with personal process, by a process server, by serving its Attorney for Service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      Defendant Paul Hearn is an individual residing in and domiciled in the State of Montana. This defendant may be served with personal process by a process server at his place of residence at 2334 Merganser Drive, Kalispell, Montana 59901.

7.      Defendant Cheryl Steppig is an individual residing in and domiciled in the State of Illinois. This defendant may be served with personal process by a process server at her place of residence at 4565 Fountain Brook Drive, Waterloo, Illinois 62298.

## JURISDICTION

8.   The Court has jurisdiction over this cause of action because the amount in controversy is within the jurisdictional limits of the Court.  Plaintiffs are seeking monetary relief over $100,000 but not more than $200,000.  Plaintiffs reserve the right to amend their petition during and/or after the discovery process.

9.   The Court has jurisdiction over Defendant Metropolitan because this defendant is a domestic insurance company that engages in the business of insurance in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

10.  The Court has jurisdiction over Defendant Metlife because this defendant is a foreign insurance company that engages in the business of insurance in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

11.  The Court has jurisdiction over Defendant MAH because this defendant is a foreign insurance adjusting company that engages in the business of insurance in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

12.  The Court has jurisdiction over Defendant Hearn because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

13.  The Court has jurisdiction over Defendant Steppig because this defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arise out of this defendant's business activities in the State of Texas.

## VENUE

14.     Venue is proper in Bexar County, Texas, because the insured property is situated in Bexar County, Texas. TEX. CIV. PRAC. & REM. CODE §15.032.

## FACTS

15.     Plaintiffs are the owners of a Texas Homeowners' Insurance Policy (hereinafter referred to as "the Policy"), which was issued by Metropolitan and/or Metlife.

16.     Plaintiffs own the insured property, which is specifically located at 2101 Sacramento, San Antonio, Texas 78201, in Bexar County (hereinafter referred to as "the Property").

17.     Metropolitan and/or Metlife sold the Policy insuring the Property to Plaintiffs.

18.     On or about April 12, 2016, a hail storm and/or windstorm struck Bexar County, Texas, causing severe damage to homes and businesses throughout the area, including Plaintiffs' residence.   Specifically, Plaintiffs' roof sustained extensive damage during the storm. Water intrusion through the roof caused significant damage throughout the entire home and garage including, but not limited to, the home's ceilings, walls, insulation, and flooring.   Plaintiffs' home also sustained substantial structural and exterior damage during the storm.  Furthermore, Plaintiffs sustained significant damage to and their air conditioning unit.   Immediately after the storm, Plaintiffs filed a claim with their insurance company, Metropolitan and/or Metlife, for the damages to their home caused by the hail storm and/or windstorm.

19.     Plaintiffs submitted a claim to Metropolitan and/or Metlife against the Policy for Other Structure Damage, Roof Damage, Structural Damage, Water Damage, and Wind Damage the Property sustained as a result of the hail storm and/or windstorm.

20.    Plaintiffs asked that Metropolitan and/or Metlife cover the cost of repairs to the Property, including but not limited to, repair and/or replacement of the roof and repair of the gutters, siding and interior water damages to the Property, pursuant to the Policy.

21.    Defendant Metropolitan and/or Metlife assigned Defendant MAH as the adjusting company on the claim. Metropolitan and/or Metlife and/or MAH then assigned Defendants Hearn and Steppig as the individual adjusters on the claim. The adjusters assigned to Plaintiffs' claim were improperly trained and failed to perform a thorough investigation of Plaintiffs' claim. On or about April 19, 2016, Hearn conducted a substandard inspection of Plaintiffs' home. He spent an insufficient amount of time inspecting the entire Property to scope damages, and failed to thoroughly inspect all of the damages to both the interior and exterior of the Property. Specifically, Defendant Hearn spent only about ten (10) minutes on his inspection of the entire Property, including the time it took to get onto the roof and scope the damages. Furthermore, Hearn failed to conduct a thorough inspection of the interior thereby ignoring many of the properly covered Storm damages which eventually led to an underpayment of the claim. Defendant Hearn's inadequate inspection is further evidenced by his April 22, 2016, estimate report, which failed to provide a fair and accurate assessment of Plaintiffs' damages which were actually included in his inspection, such as damage to the roof. Moreover, the damages that Hearn did include in his report were grossly undervalued, in part because he both underestimated and undervalued the cost of materials required for necessary repairs, incorrectly applied materials sales tax, and failed to include adequate compensation for contractor's overhead and profit. Further, Hearn denied payment for several items reported by Plaintiffs to be damaged. For these items, Hearn provided

Plaintiffs with no explanation for why coverage was not being extended under Plaintiffs' Policy.   In his report, for example, Defendant Hearn failed to include and allow compensation for the hail storm and/or windstorm damages to the exterior siding, gutters, living room, master bedroom, master bathroom, and hallway.   Further, Hearn failed to acknowledge the extensive and obvious Storm damages to Plaintiffs' air conditioning unit on the Property.

22.     Steppig also actively participated in the handling of Plaintiffs' claim by failing to conduct a reasonable investigation.   Specifically, she corresponded with Plaintiffs regarding the claim in letters, communicated with Plaintiffs by telephone, and/or reviewed reports, documents and information, such as in her May 4, 2016.  This letter shows that Steppig failed to thoroughly review and properly oversee Hearn's work, ultimately approving and/or submitting an improper adjustment and an inadequate resolution to Plaintiffs' claim.  Had Steppig even performed a cursory review of Hearn's work on Plaintiffs' claim, it would have been clear that Plaintiffs' claim was completely mishandled. Unfortunately, for Plaintiffs, this did not happen. Defendant Steppig failed to thoroughly review Defendant Hearn's assessment of the claim and ultimately approved and/ or submitted an inaccurate report of the damages.   Steppig's and Hearn's inadequate investigation(s) of the claim was relied upon by Metropolitan and/or Metlife and resulted in Plaintiffs' claim being undervalued and underpaid.

23.     Although Hearn and Steppig were aware of Plaintiffs' reported potential damages covered by the Policy, they made determinations as to the amount of Plaintiffs' claim without conducting a thorough and reasonable inspection of Plaintiffs' damages. Ultimately, Defendants Hearn and Steppig determined that the damages were either not

covered under the Policy and/or valued the damages below the applicable Policy deductible; thus, to date, Plaintiffs have yet to receive the full payment to which they are entitled.

24.     Defendants Metropolitan and/or Metlife and/or MAH, along with other Metropolitan and/or Metlife and/or MAH personnel, failed to thoroughly review and properly oversee the work of Defendants Hearn and Steppig, ultimately approving an improper adjustment of and an inadequate, unfair settlement of Plaintiffs' claim.   Further, Defendants misrepresented that some of Plaintiffs' damages were not covered under the Policy, when the losses, in fact, were properly covered damages.  Simply stated, Metropolitan and/or Metlife underpaid Plaintiffs' claim without performing a reasonable investigation.  As a result of Defendants' wrongful acts and omissions set forth above and further described herein, Plaintiffs were considerably underpaid on their claim and have suffered further damages.

25.     Together, Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig set out to deny and/or underpay on properly covered damages.  As a result of this unreasonable investigation, including the under-scoping of Plaintiffs' storm damages during the investigation and failure to provide full coverage for the damages sustained, Plaintiffs' claim was improperly adjusted, and they were denied adequate and sufficient payment to repair their home.  The mishandling of Plaintiffs' claim has also caused a delay in their ability to fully repair their home, which has resulted in additional damages.  To date, Plaintiffs have yet to receive the full payment to which they are entitled under the Policy.

26.     As detailed in the paragraphs below, Metropolitan and/or Metlife wrongfully denied Plaintiffs' claim for repairs of the Property, even though the Policy provided coverage for

losses such as those suffered by Plaintiffs. Furthermore, Metropolitan and/or Metlife underpaid some of Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

27. To date, Metropolitan and/or Metlife continues to delay in the payment for the damages to the property. As such, Plaintiffs have not been paid in full for the damages to their home.

28. Defendant Metropolitan and/or Metlife failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. Metropolitan's and/or Metlife's conduct constitutes a breach of the insurance contract between Metropolitan and/or Metlife and Plaintiffs.

29. Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §541.060(a)(1).

30. Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy. Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

31.   Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement. Specifically, Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

32.   Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time. Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig. Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

33.   Defendants Metropolitan, Metlife, MAH, Hearn and Steppig refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig failed to conduct a reasonable investigation. Specifically, Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. Defendants Metropolitan's,

Metlife's, MAH's, Hearn's, and Steppig's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

34.     Defendants Metropolitan and/or Metlife failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim. Metropolitan's and/or Metlife's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

35.     Defendants Metropolitan and/or Metlife failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information. Metropolitan's and/or Metlife's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

36.     Defendants Metropolitan and/or Metlife failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for their claim. Metropolitan's and/or Metlife's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

37.     From and after the time Plaintiffs' claim was presented to Defendants Metropolitan and/or Defendant Metlife, the liability of Metropolitan and/or Metlife to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Metropolitan and/or Metlife has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny

the full payment.  Metropolitan's and/or Metlife's conduct constitutes a breach of the common law duty of good faith and fair dealing.

38.    Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

39.    As a result of Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorney and law firm who are representing them with respect to these causes of action.

40.    Plaintiffs' experience is not an isolated case.  The acts and omissions Metropolitan and/or Metlife committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Metropolitan and/or Metlife with regard to handling these types of claims.  Metropolitan's and/or Metlife's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## CAUSES OF ACTION:

### CAUSES OF ACTION AGAINST DEFENDANTS HEARN AND STEPPIG

#### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
#### UNFAIR SETTLEMENT PRACTICES

41.    Defendants Metropolitan and/or Metlife assigned Defendants Hearn and Steppig to adjust the claim.  Defendants Hearn and Steppig were improperly trained to handle claims of this nature and performed an unreasonable investigation of Plaintiffs' damages.  During their investigation, the adjusters failed to properly assess Plaintiffs' hail storm and/or windstorm damages.  The adjusters also omitted covered damages from their reports,

including many of Plaintiffs' interior damages.   In addition, the damages that the adjusters did include in the estimate were severely underestimated.

42.   Defendants Hearn's and Steppig's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.   TEX. INS. CODE §541.060(a).   All violations under this article are made actionable by TEX. INS. CODE §541.151.

43.   Defendants Hearn and Steppig are each individually liable for their unfair and deceptive acts, irrespective of the fact each was acting on behalf of Metropolitan and/or Metlife, because each is a "person" as defined by TEX. INS. CODE §541.002(2). The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *Hearn* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added).   (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

44.   Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendants' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating that Plaintiffs' damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damage as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an

adequate explanation for the inadequate compensation Plaintiffs received. Defendants Hearn's and Steppig's unfair settlement practice, as described above and the example given herein, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

45.    Defendants Hearn's and Steppig's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

46.    Defendants Hearn and Steppig failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement. Specifically, Defendants Hearn and Steppig failed to offer Plaintiffs adequate compensation without any explanation as to why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. The unfair settlement practice of Defendants Hearn and Steppig as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

47.    Defendants Hearn's and Steppig's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to

submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

48.    Defendants Hearn and Steppig did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' exterior and interior damages, although reported by Plaintiffs to. Defendants Hearn's and Steppig's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### CAUSES OF ACTION AGAINST DEFENDANT MAH

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

49.    Defendant MAH's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

50.    Defendant MAH's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

51.    Defendant MAH's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

Page 14

52.   Defendant MAH's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS CODE §541.060(a)(3).

53.   Defendant MAH's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

54.   Defendant MAH's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(A)(7).

### CAUSES OF ACTION AGAINST ALL DEFENDANTS

55.   Plaintiffs are not making any claims for relief under federal law.

### FRAUD

56.   Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig are liable to Plaintiffs for common law fraud.

57.   Each and every one of the representations, as described above, concerned material facts for the reason that absent such representations, Plaintiffs would not have acted as they did, and which Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig knew were false or made recklessly without any knowledge of their truth as a positive assertion.

58. The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud.

## CONSPIRACY TO COMMIT FRAUD

59. Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig are liable to Plaintiffs for conspiracy to commit fraud. Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig were members of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means. In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants Metropolitan, Metlife, MAH, Hearn, and Steppig committed an unlawful, overt act to further the object or course of action. Plaintiffs suffered injury as a proximate result.

## CAUSES OF ACTION AGAINST METROPOLITAN AND/OR METLIFE ONLY

60. Defendants Metropolitan and/or Metlife is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

## BREACH OF CONTRACT

61. Defendants Metropolitan's and/or Metlife's conduct constitutes a breach of the insurance contract made between Metlife and Plaintiffs.

62. Defendants Metropolitan's and/or Metlife's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Metropolitan's and/or Metlife's insurance contract with Plaintiffs.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

63.   Defendants Metropolitan's and/or Metlife's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

64.   Defendants Metropolitan's and/or Metlife's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

65.   Defendants Metropolitan's and/or Metlife's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Metlife's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

66.   Defendants Metropolitan's and/or Metlife's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

67.   Defendants Metropolitan's and/or Metlife's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

68.     Defendants Metropolitan's and/or Metlife's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

69.     Defendants Metropolitan's and/or Metlife's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

70.     Defendants Metropolitan's and/or Metlife's failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

71.     Defendants Metropolitan's and/or Metlife's failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

72.     Defendants Metropolitan's and/or Metlife's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

### ACTS CONSTITUTING ACTING AS AGENT

73.     As referenced and described above, and further conduct throughout this litigation and lawsuit, Hearn and Steppig are agents of Metropolitan and/or Metlife based on their acts

during the handling of this claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. TEX. INS. CODE §4001.051.

74.     Separately, and/or in the alternative, as referenced and described above, Metropolitan and/or Metlife ratified the actions and conduct of Hearn and Steppig including the completion of their duties under the common law and statutory law.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

75.     Defendants Metropolitan's and/or Metlife's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

76.     Defendants Metropolitan's and/or Metlife's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Metropolitan and/or Metlife knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

### KNOWLEDGE

77.     Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein.

### DAMAGES

78.     Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

79.     As previously mentioned, the damages caused by the April 12, 2016, hail storm have not been properly addressed or repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiffs. These

damages are a direct result of Defendants Metropolitan's, Metlife's, MAH's, Hearn's, and Steppig's mishandling of Plaintiffs' claim in violation of the laws set forth above.

80.   For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

81.   For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages. TEX. INS. CODE §541.152.

82.   For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

83.   For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

84.   For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

85.   For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of

Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## JURY DEMAND

86.    Plaintiffs hereby request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Bexar County, Texas.   Plaintiffs hereby tender the appropriate jury fee.

## WRITTEN DISCOVERY

### REQUESTS FOR DISCLOSURE

87.    *Plaintiffs' Request for Disclosure to Defendant Metropolitan Lloyds of Texas* is attached as "Exhibit A."  *Plaintiffs' Request for Disclosure to Defendant Metropolitan Property & Casualty Ins. Co.* is attached as "Exhibit A-1."  *Plaintiffs' Request for Disclosure to Defendant Metlife Auto & Home Insurance Agency, Inc.* is attached as "Exhibit A-2." *Plaintiffs' Request for Disclosure to Defendant Paul Hearn* is attached as "Exhibit A-3." *Plaintiffs' Request for Disclosure to Defendant Cheryl Steppig* is attached as "Exhibit A-4."

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for prejudgment and postjudgment interest as allowed

by law, and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

MOSTYN LAW

_/s/ Gregory F. Cox_
Gregory F. Cox
State Bar No. 00793561
gfcdocketefile@mostynlaw.com
6280 Delaware Street
Beaumont, Texas 77706
(409) 832-2777 (Office)
(409) 832-2703 (Facsimile)

_/s/ Molly K. Bowen_
Molly K. Bowen
State Bar No. 24069898
ala_teamefile@mostynlaw.com
3810 W. Alabama St.
Houston, Texas 77027
(713) 714-0000 (Office)
(713) 714-1111 (Facsimile)

**ATTORNEY FOR PLAINTIFFS**

FILED
7/5/2017 11:30 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By Consuelo Gomez

CAUSE NO. 2017CI08171

| | | |
|---|---|---|
| MICHAEL GONZALEZ AND, | § | IN THE DISTRICT COURT |
| LIZZETT REQUENEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | 73RD JUDICIAL DISTRICT |
| COMPANY OF TEXAS, METROPOLITAN | § | |
| PROPERTY & CASUALTY INSURANCE | § | |
| COMPANY, METLIFE AUTO & HOME | § | |
| INSURANCE AGENCY, INC., | § | |
| PAUL HEARN, AND CHERYL STEPPIG, | § | |
| | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE
## COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiffs' Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article 1, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United

States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1.    **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, we cover:
    A.    the dwelling owned by **you** on the **residence premises**; and
    B.    structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

*  *  *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises**:
1.    we cover private structures owned by **you** and separated from the dwelling by clear space; or

*  *  *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

We do not cover private structures:
1.    used or held for any **business** or commercial farming purposes; or
2.    rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

*  *  *

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
We cover personal property owned or used by **you** while it is anywhere in the world.

* * *

## CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
We will pay only when a loss exceeds the deductible amount shown in the Declarations.
We will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

### SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold**. There is no coverage for loss which, in whole or in part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**. This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for Fungus and Mold Remediation.

* * *

2.    **Windstorm or Hail**
      We do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

* * *

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

1.  We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.  **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

　　1.　flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

　　2.　water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

　　3.　water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

\* \* \*

H.  **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2.  We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:  (a) directly or

indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.    conduct, act, failure to act, or decision of any person, group, organization or governmental body;

B.    defective, inadequate, faulty or unsound:

    1.    planning, zoning, development, surveying, siting;

    2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    3.    materials used in repair, construction, renovation or remodeling; or

    4.    maintenance;

    of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

* * *

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss.  If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

* * *

Pleading further, Defendant would also assert that Plaintiffs have failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

* * *

2.   **What you Must do After a Loss.** We have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

   A.   Promptly notify **us** or **our** representative.
   B.   Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.
   C.   Cooperate with us in the investigation of a claim.

* * *

   E.   At any reasonable time and place **we** designate, and as often as **we** reasonably require:
      1.   show **us** the damaged property;
      2.   submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

* * *

7.   **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

   The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

   **You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

   With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

### III. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By: Dennis D. Conder
    State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of July, 2017, a copy of the foregoing was delivered to Plaintiffs' counsel of record in accordance with the Texas Rules of Civil Procedure.

Dennis D. Conder

PAN/PLDG/588460 1/001466.17003

FILED
7/5/2017 11:32 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Consuelo Gomez

CAUSE NO. 2017CI08171

| | | |
|---|---|---|
| MICHAEL GONZALEZ AND, | § | IN THE DISTRICT COURT |
| LIZZETT REQUENEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | 73RD JUDICIAL DISTRICT |
| COMPANY OF TEXAS, METROPOLITAN | § | |
| PROPERTY & CASUALTY INSURANCE | § | |
| COMPANY, METLIFE AUTO & HOME | § | |
| INSURANCE AGENCY, INC., | § | |
| PAUL HEARN, AND CHERYL STEPPIG, | § | |
| | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

## DEFENDANT METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Property and Casualty Insurance Company, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. VERIFIED DENIAL

Defendant Metropolitan Property and Casualty Insurance Company, pursuant to Rule 93(2) and (4) of the Texas Rules of Civil Procedure, files this Verified Denial, stating that Metropolitan Property and Casualty Insurance Company is not liable in the capacity in which it is sued. Furthermore, Defendant Metropolitan Property and Casualty Insurance Company states that there is a defect of parties and that it is not a proper party to this proceeding.

## II. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiffs' Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

## III. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1.  **Dwelling Owners**. If your dwelling is a one, two, three or four family dwelling, we cover:
    A.  the dwelling owned by **you** on the **residence premises**; and
    B.  structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises**:

1.    we cover private structures owned by **you** and separated from the dwelling by clear space; or

* * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

We do not cover private structures:
1.    used or held for any **business** or commercial farming purposes; or
2.    rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

* * *

## COVERAGE C - PERSONAL PROPERTY
**Personal Property Covered**
We cover personal property owned or used by **you** while it is anywhere in the world.

* * *

## CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
We will pay only when a loss exceeds the deductible amount shown in the Declarations. We will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

### SECTION I – BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold**. There is no coverage for loss which, in whole or in part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**. This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES for Fungus and Mold Remediation.**

\* \* \*

2.   **Windstorm or Hail**
     **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

\* \* \*

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

1.   **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.   **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:

     1.   flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
     2.   water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
     3.   water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

     This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

* * *

H.     **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

* * *

2.     **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:   (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

   A.     conduct, act, failure to act, or decision of any person, group, organization or governmental body;
   B.     defective, inadequate, faulty or unsound:
          1.     planning, zoning, development, surveying, siting;
          2.     design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
          3.     materials used in repair, construction, renovation or remodeling; or
          4.     maintenance;
          of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and
   C.     weather conditions.

          However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.     **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

   A.     wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

* * *

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiffs have failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

\* \* \*

2.   **What you Must do After a Loss.** We have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

A.   Promptly notify **us** or **our** representative.
B.   Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.
C.   Cooperate with us in the investigation of a claim.

\* \* \*

E.   At any reasonable time and place **we** designate, and as often as **we** reasonably require:
   1.   show **us** the damaged property;
   2.   submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

\* \* \*

7.   **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the

two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

## IV. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP


By:     Dennis D. Conder
        State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6+ day of _____, 2017, a copy of the foregoing was delivered to Plaintiffs' counsel of record in accordance with the Texas Rules of Civil Procedure.


_____
Dennis D. Conder

PAN/PLDG/588459.1/001466.17003

STATE OF MISSOURI     §
                              §

COUNTY OF ST. LOUIS    §

     BEFORE ME, the undersigned Notary Public, on this day personally appeared Brian Potter, who being by me duly sworn on his oath deposed and said that he is a representative for Metropolitan Property and Casualty Insurance Company, that he has read the foregoing Original Answer for which this Verification has been prepared; and that to his personal knowledge states the statements contained therein are true and correct.

                             Brian Potter

     SUBSCRIBED AND SWORN TO BEFORE ME on this _30_ day of _June 2017_ 2017, to certify which witness my hand and official seal.

                        Notary Public in and for the State of Missouri

DONNA K. COGNASSO
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 13, 2019
Commission Number: 15637347

FILED
7/5/2017 11:31 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By  Consuelo Gomez

CAUSE NO. 2017CI08171

| | | |
|---|---|---|
| MICHAEL GONZALEZ AND, | § | IN THE DISTRICT COURT |
| LIZZETT REQUENEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | 73RD JUDICIAL DISTRICT |
| COMPANY OF TEXAS, METROPOLITAN | § | |
| PROPERTY & CASUALTY INSURANCE | § | |
| COMPANY, METLIFE AUTO & HOME | § | |
| INSURANCE AGENCY, INC., | § | |
| PAUL HEARN, AND CHERYL STEPPIG, | § | |
| | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

## DEFENDANT METLIFE AUTO & HOME INSURANCE AGENCY, INC.'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW MetLife Auto & Home Insurance Agency, Inc., ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I.  VERIFIED DENIAL

Defendant MetLife Auto & Home Insurance Agency, Inc., pursuant to Rule 93(2) and (4) of the Texas Rules of Civil Procedure, files this Verified Denial, stating that MetLife Auto & Home Insurance Agency, Inc. is not liable in the capacity in which it is sued.  Furthermore, Defendant MetLife Auto & Home Insurance Agency, Inc. states that there is a defect of parties and that it is not a proper party to this proceeding.

## II. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiffs' Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

## III. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

### COVERAGE A - DWELLING
1. **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A. the dwelling owned by **you** on the **residence premises**; and
   B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

### COVERAGE B – PRIVATE STRUCTURES
At the location of the **residence premises**:

1.      we cover private structures owned by **you** and separated from the dwelling by clear space; or

\* \* \*

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1.      used or held for any **business** or commercial farming purposes; or
2.      rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

\* \* \*

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

\* \* \*

## CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

### SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold**. There is no coverage for loss which, in whole or in part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**. This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

* * *

2.  **Windstorm or Hail**
    **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

* * *

### SECTION I - LOSSES WE DO NOT COVER

* * *

1.  **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

D.  **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:

    1.  flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
    2.  water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
    3.  water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

    This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, we pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then we pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by you is excluded even if weather conditions contribute in any way to produce the loss.

\* \* \*

H.    **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2.    We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, we pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, we do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:   (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.    conduct, act, failure to act, or decision of any person, group, organization or governmental body;

B.    defective, inadequate, faulty or unsound:
1.    planning, zoning, development, surveying, siting;
2.    design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3.    materials used in repair, construction, renovation or remodeling; or
4.    maintenance;
of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and

C.    weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.    We do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

A.    wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

\* \* \*

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiffs have failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

## SECTION I – CONDITIONS

\* \* \*

2.  **What you Must do After a Loss.** We have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us:**

    A.  Promptly notify **us** or **our** representative.
    B.  Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.
    C.  Cooperate with us in the investigation of a claim.

    \* \* \*

    E.  At any reasonable time and place **we** designate, and as often as **we** reasonably require:
        1.  show **us** the damaged property;
        2.  submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

    \* \* \*

7.  **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the

two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

### IV.  JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By: ~~Dennis D. Conder~~
State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METLIFE AUTO & HOME INSURANCE
AGENCY, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 5th day of ____, 2017, a copy of the foregoing was delivered to Plaintiffs' counsel of record in accordance with the Texas Rules of Civil Procedure.

Dennis D. Conder

PAN/PLDG/588467.1/001466.17003

STATE OF MISSOURI       §
                        §
COUNTY OF ST. LOUIS     §

    BEFORE ME, the undersigned Notary Public, on this day personally appeared Brian Potter, who being by me duly sworn on his oath deposed and said that he is a representative for MetLife Auto & Home Insurance Agency, Inc., that he has read the foregoing Original Answer for which this Verification has been prepared; and that to his personal knowledge states the statements contained therein are true and correct.

_____
Brian Potter

    SUBSCRIBED AND SWORN TO BEFORE ME on this 30 day of June 2017, 2017, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Missouri

DONNA K. COGNASSO
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 13, 2019
Commission Number: 15637347

FILED
7/5/2017 11:33 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Consuelo Gomez

CAUSE NO. 2017CI08171

| | | |
|---|---|---|
| MICHAEL GONZALEZ AND, | § | IN THE DISTRICT COURT |
| LIZZETT REQUENEZ, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | 73RD JUDICIAL DISTRICT |
| COMPANY OF TEXAS, METROPOLITAN | § | |
| PROPERTY & CASUALTY INSURANCE | § | |
| COMPANY, METLIFE AUTO & HOME | § | |
| INSURANCE AGENCY, INC., | § | |
| PAUL HEARN, AND CHERYL STEPPIG, | § | |
| | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

## DEFENDANT CHERYL STEPPIG'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Cheryl Steppig ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiffs' Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article 1, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article 1, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1. **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   - A. the dwelling owned by **you** on the **residence premises**; and
   - B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

\* \* \*

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises**:
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

\* \* \*

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

We do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

\* \* \*

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
We cover personal property owned or used by **you** while it is anywhere in the world.

\* \* \*

## CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
## (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A -- DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I – LOSSES WE DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold**. There is no coverage for loss which, in whole or in part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**. This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for Fungus and Mold Remediation.

\* \* \*

2.     **Windstorm or Hail**
        **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

\* \* \*

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

1.      **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

D.      **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

  1.      flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
  2.      water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
  3.      water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

* * *

H.      **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

* * *

2.      **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:  (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

  A.      conduct, act, failure to act, or decision of any person, group, organization or governmental body;

B.  defective, inadequate, faulty or unsound:
    1.  planning, zoning, development, surveying, siting;
    2.  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    3.  materials used in repair, construction, renovation or remodeling; or
    4.  maintenance;
    of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and
C.  weather conditions.

    However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.  **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

    A.  wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

                              * * *

    We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

                              * * *

    Pleading further, Defendant would also assert that Plaintiffs have failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

                       SECTION I – CONDITIONS

                              * * *

2. **What you Must do After a Loss.** We have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

    A.    Promptly notify **us** or **our** representative.

    B.    Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

    C.    Cooperate with us in the investigation of a claim.

* * *

    E.    At any reasonable time and place **we** designate, and as often as **we** reasonably require:

        1.    show **us** the damaged property;

        2.    submit to questions concerning the loss under oath while not in the presence of any other person defined as "**you**", and sign and swear to the answers; and

* * *

7. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term "**you**" applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

### III.  JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with her costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show herself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By:   Dennis D. Conder
      State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
CHERYL STEPPIG

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of July, 2017, a copy of the foregoing was delivered to Plaintiffs' counsel of record in accordance with the Texas Rules of Civil Procedure.

Dennis D. Conder

PAN/PLDG/588468.1/001466.17003

---

DEFENDANT CHERYL STEPPIG'S ORIGINAL ANSWER - PAGE 8